UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Violation Nos. 1972831-33 |
| SCOTT FORSTELL | ) Trial date: July 16, 2009 |

## MEMORANDUM OPINION

### I. Introduction

THIS MATTER came before the Court for trial on July 16, 2009.[1] Defendant is charged with speeding 62 miles per hour in a 40 miles per hour zone, driving under the influence of alcohol and driving while intoxicated. During the trial, the Government moved to admit five exhibits into evidence. Defendant objected to admission of all five exhibits and the Court took the matter under advisement to issue this Memorandum Opinion.

Early in the morning on May 8, 2009, Officer Pente Gillespie of the National Park Police stopped defendant Scott P. Forstell ("defendant") while defendant was driving on the George Washington Parkway. Defendant was pulled over for speeding 62 miles per hour in a 40 miles per hour zone. While conversing with defendant, Officer Gillespie noticed that the defendant smelled of alcohol and that his eyes appeared red and glassy. After defendant was unable to perform a series of roadside

---

[1] The timestamp corresponding to defendant's trial is 10:23:31 to 11:37:30.

1

sobriety tests satisfactorily, Officer Gillespie transported defendant to a station house in order to administer a breathalyser test to defendant.

At defendant's trial, the government called Officer Gillespie to testify about the events of May 8, 2009 and moved for the admission of five exhibits. Government Exhibit 1 is a certificate signed by a technician with the Radar Lab of Maryland certifying that a Speed Measuring Radar Device had been checked for accuracy and correctness of operation.[2] Government Exhibit 2 is a certificate signed by a technician of the Radar Lab of Maryland certifying that tuning forks bearing serial numbers 093050 and 093084 had been tested and found to be operating properly.[3] Government Exhibit 3 is the Intoxilyzer 5000EN

---

[2] Specifically, the certificate states that the transmitter frequency of the Speed Measuring Radar Device bearing the serial number G2-2651 had been tested and found to be within the prescribed limits. According to the certificate, the Speed Measuring Radar Device is certified accurately within +/-1 mph (+/-2 kph) in stationary mode and/or +/-1 mph (+/-2 kph) in moving mode. Antenna 1, bearing serial number G2-05114 was found to have a transmitter frequency of 35.600 Ghz and a maximum aperture power density of 0.15 mw om. Antenna 1, bearing serial number G2-02981, was found to have a transmitter frequence of 35.600 Ghz and a maximum aperture power density of 0.15 mw om. In addition to noting that the laser being certified was model type GEN II, the certificate lists two serial numbers for associated units. These serial numbers, 093050 and 093084 match the serial numbers of the tuning forks that are the subject of the certificate marked Government Exhibit 2. Finally, the certificate marked as Government Exhibit 1 bears an expiration date of April 16, 2010.

[3] Specifically, the certificate states that the tuning fork bearing serial number 093050 had been tested and found to oscillate at 3.74= 5 Hz at 70 degrees Fahrenheit and will cause a Doppler traffic radar transmitting at 35.600 GHz to display 35.2 MPH Km/h and that the tuning fork bearing serial number 093084 has been tested and found to oscillate at 5.37 =5 Hz at 70 degrees Fahrenheit and will cause a Doppler traffic radar transmitting at 35.600 GHz to display 50.6 MPH KM/h.

Maintenance Record for the Intoxilyzer unit bearing Serial Number 68-010813.[4] Government Exhibit 4 is a certification notice for Intoxilyzer model 5000EN, serial number 68-010813, and notes that the model has been tested and found to be suitable for use in analyzing breath alcohol.[5] Government Exhibit 5 is the results report for two breath tests administered to Scott P. Forstell on May 8, 2009 by Officer Gillespie.

Defendant objects to the admission of Government Exhibits 1 through 5 on the grounds that the recent decision of the United States Supreme Court in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2009 WL 1789468 (June 25, 2009), bars the admission of certificates of accuracy or maintenance in the absence of live testimony from the technicians who performed the tests. Additionally, Defendant alleges the accuracy of Government Exhibits 3 and 4 has not been established because the government did not provide testimony of the person who certified Government Exhibits 3 and 4 and allow the defendant to cross-examine that person.

For the reasons discussed below, the Court overrules defendant's objections to Government Exhibits 1 through 5.

## II. Discussion

---

[4] The certificate, which is signed by Sergeant Donald N. Upright, a technician in the Traffic Safety Unit of the United States Park Police, indicates that on April 14, 2009, maintenance and instrument checks were performed on the Intoxilyzer unit.

[5] Government Exhibit 4 is signed by Sergeant Donald N. Upright of the United States Park Police Traffic Safety Unit and indicates that the instrument was certified on April 14, 2009 and the certification expired on July 14, 2009.

In *Melendez-Diaz,* the Supreme Court held that the admission of certificates of analysis, offered by the prosecution in a drug trial, stating that the material seized by police and connected to the defendant was cocaine of a certain quantity, violated the defendant's Sixth Amendment right to confront the witnesses against him. Specifically, the Court found that the certificates of analysis were more appropriately described as affidavits and fell within the "core class of testimonial statements" covered by the Confrontation Clause. 129 S. Ct. at 2532 (internal citation omitted). The Court further found that, under *Crawford v. Washington*, 541 U.S. 36 (2004), the analysts' affidavits were testimonial, and, thus, the analysts were witnesses for the purposes of the Sixth Amendment. *Melendez-Diaz,* 129 S. Ct. at 2532. Therefore, unless the analysts were unavailable to testify at trial and the defendant had been afforded a prior opportunity to cross-examine them, the Confrontation Clause required that the prosecution call the analysts to testify. *Id.*

In the instant case, Officer Gillespie testified that Sergeant Donald N. Upright, the U.S Park Police technician who signed the certificates presented as Government Exhibits 3 and 4, was not present in the courtroom. Similarly, the technician who signed the certifications of accuracy for the laser and tuning fork, presented as Government Exhibits 1 and 2, respectively, also was not present in the courtroom. It is defendant's position that exhibits 1 through 4 should not be admitted in the absence of the technicians' testimony.

It is clear, however, that Government Exhibits 1 through 4 are nontestimonial and, thus, their admission does not run afoul of the Confrontation Clause. Indeed, the *Melendez-Diaz* decision explicitly notes that the Court "d[id] not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." 129 S. Ct. at n.1. *See also Larkin v. Yates*, 2009 WL 2049991, n.2 (C.D. Cal. 2009) (noting that *Melendez-Diaz* "explicitly rejected the suggestion that the Confrontation Clause required that every person whose testimony might be relevant to the authenticity of sample or accuracy of a testing device appear in person as part of the prosecution's case") "Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Melendez-Diaz*, 129 S. Ct. at n.1.

Defendant does not argue that the certificates at issue do anything more than verify the accuracy of the testing devices and equipment used by the United States Park Police.[6] Indeed, the information contained in Government Exhibits 1 through 4 merely confirms that routine accuracy and maintenance tests were performed on the laser device, tuning fork, and Intoxilyzer 5000EN unit. Certificates regarding such routine information fit squarely into the category of nontestimonial records carved out

---

[6] Notably, Officer Gillespie testified at trial that he tested the accuracy of the laser before using it to measure defendant's speed.

5

by the Supreme Court. Thus, the government is not required to make available at trial the technicians who performed the tests in order for the certificates to be admissible.

The admission of Government Exhibit 5 also does not contravene the Confrontation Clause. Government Exhibit 5 contains the results from the breath test administered to defendant by Officer Gillespie. In addition to offering the exhibit at trial, the prosecution called Officer Gillespie to testify as to the steps he performed in administering the breath test to defendant.[7] Officer Gillespie stated that, upon arriving at the District-2 substation, he offered defendant a glass of water, read defendant his rights and quoted to defendant the chemical testing notice contained in 36 C.F.R. § 4.23.[8] Defendant then indicated he would take the breath test. Officer Gillespie further testified that he sat across from defendant for the requisite 20-minute waiting and observation period before administering the test and that defendant did not vomit, hiccup or burp during that time. Before conducting the test, Officer

---

[7] Officer Gillespie testified that he was certified to perform breath tests on the Intoxilyzer 5000 in 2004 by the United States Park Police. His certification expires in 2010. Officer Gillespie also that he has administered hundreds of breath tests during his career.

[8] 36 C.F.R. § 4.23 reads, in pertinent part: (c) Tests. (1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content. (2) Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissible in any related judicial proceedings. (3) Any test shall be conducted using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

6

Gillespie inspected defendant's mouth, as required, and then administered the first breath test at 1:52 am. The second breath test was conducted at 1:58 am. According to the officer's testimony, there was no radio interference with the test and, before administering the test, he reviewed the unit's log book to verify that no problems had been logged with previous tests. Finally, Officer Gillespie testified that he looked at the certification sticker on the Intoxilyzer unit to be sure that the expiration had not passed and also checked to be sure the solution in the unit had not expired. Accordingly, defendant had the opportunity to cross-examine Officer Gillespie regarding any or all of these steps in order to determine whether he properly performed the test. Thus, with respect to Government Exhibit 5, defendant's right to confrontation was satisfied by his cross-examination of Officer Gillespie.

### III. Conclusion

For the reasons stated above, defendant's objections to Government Exhibits 1 through 5 are overruled. An Order shall issue forthwith. The parties are directed to contact chambers to schedule a date to continue defendant's trial.[9]

---

[9] The record for the July 16, 2009 proceedings reflects that defendant completed cross-examination of Officer Gillespie and the government reserved its right to recall Officer Gillespie to testify on rebuttal about the results of the breath test.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 18, 2009
Alexandria, Virginia